Good morning, lawyers. For the record, I'm Tony Gallagher. I'm the Federal Defender for the District of Montana, and it's my pleasure to represent Boyd Whitwright at this oral argument. Your Honors, I have raised in my brief two issues. I wish to focus this morning on the second issue, and that is the Court's misapplication of the 3553A factors and an unreasonable sentence that resulted. If the Court, however, has any questions with regard to my first argument, which I'll term the Reardon argument, I'd be glad to try to answer those for you. Your Honors, with regard to the reasonableness of the sentence, the mixed court, this Court has said that there is a two-step procedure. First, the Court must correctly calculate the guideline range, applying any reductions or adjustments or enhancements and departures, and then the Court must apply the 3553A factor. The district court in Mr. Whitwright's case committed clear error in the second of those two steps, in that it failed to articulate in any meaningful manner its assessment of the 3553A factors. Certainly, the district court cited to the 3553A factors and listed those factors in summary fashion when it imposed sentence on Mr. Whitwright at the end of the sentencing proceeding. And the government has correctly cited to those and quoted to those in its brief. My argument today, however, is that that's just not enough. And I think, as I have advised the Court in my 28J letter, United States v. Carty tells this Court that that was not enough. When we take the development of the sentencing law since Booker, we have to, of course, look at Ameline, Cantrell, Zavala, Kimbrough. Then we go to Plouffe, which says that even a case that is within the guideline range, as Mr. Whitwright's was, is one that is subject to reasonableness review. And then we have to look at Mix and Diaz, which talk about the fact that a sentencing proceeding is not a scientific endeavor, but it is one that requires the Court to take a close look at both guideline and non-guideline factors. Counsel, the sentencing judge in this case had a rather lengthy discussion and talked about things like reading all the letters that were submitted on your client's behalf, considered rehabilitation possibilities, discussed a number of images, went through a rather lengthy conversation about all the things that the Court was thinking about, which are factors under the statute. You didn't just say, well, there's the guideline I've done. Why isn't that discussion an indicator that the Court, not just in a pro forma way, but actually considered and deliberated about and applied the statutory factors? Your Honor, most respectfully, certainly Judge Haddon did have a lengthy discussion. But that lengthy discussion really gave this Court no reasons for the imposition of the sentence and no reasons for his rejection of a sentence below the guideline range, as was requested by the defendant. In this particular case, we raised two specific 3553A factors for the Court to consider in sentencing. One was the history and characteristics of Mr. Whitwright, and we backed that up with evidence, with sentencing letters. What indicator do we have that the judge failed to think about those things? Don't we have every indication that he thought about those, along with the other things that he talked about? Well, Your Honor, we have an indication that he thought about them, but we don't have an indication of what he thought. Let me give you an analogy. If I mention that Brooks Robinson was the greatest third baseman who ever played, I really haven't explained to you why. I haven't explained to you why I hold that position. And certainly you may disagree with me. You may think that there's another third baseman who was better. But you haven't articulated why you think my position is bad, and I haven't articulated to you why my position is correct. And in this particular case, Judge Haddon never articulated for this Court to assist you in your reasonableness analysis of why he rejected what were legitimate claims under 3553A. Isn't the only requirement that he give us his understanding of why he selected what he did, not why he rejected what you gave him? Do you understand the distinction? I do understand the distinction, Your Honor. In other words, if we had been presented with written arguments about six different third basemen and why each one was the best, and he concluded that this one is the best, don't we assume that he considered all six? I don't think we can assume that unless he gives us reasons why he considers that sixth third baseman was the best. And Brooks Robinson is the best third baseman. But this Court can't assume what he thought. I mean, even if you look at the written judgment, the written judgment in this case gives this Court no assistance whatsoever because, as a matter of fact, it's wrong. At excerpts of Record 105, the Court says the sentence is within a divider range and is not greater than 24 months. When we know that it was greater than 24 months, it was 108 months. So it's wrong. He didn't give you any reasons. This Court has to make that reasonableness inquiry on a de novo review. You have to be able to see what the judge did and why he did it. And we can't tell what Judge Haddon did here with regard to the legitimately raised factors. I think that Cardee really assists this Court. We can't assume that the district court has done it properly. There's no checklist that's necessary, and I admit that. But that's really what Judge Haddon did was just go through a checklist. And he mentioned the factors. He mentioned them all. But he didn't mention how the specific issues raised by Mr. Whitwright during his sentencing hearing and prior to the sentencing hearing in his sentencing memorandum were addressed by the Court, rejected or accepted by the Court, and how they factored into the ultimate sentence of 108 months that he determined was appropriate in this case. And it was inappropriate because he didn't take that extra step and say to this Court, this is why his history and characteristics are not sufficient. Furthermore, we asked the Court to consider rehabilitation for Mr. Whitwright, submitted to the Court an extensive psychoanalysis and examination, as a matter of fact, by a sex offender treatment provider, as was suggested and recommended and demanded by the government, in the plea agreement. Well, the Court did mention the treatment program at Butner, Carolina. But what I'm concerned about here is whether there were – you're saying that the judge, in effect, didn't make findings of fact on the disputed – on disputed issues of fact about the character of the offense and the character of the offender and so on. They weren't presented as – as disputed questions of fact, were they? So why – why should he make findings? Your Honor, certainly they weren't couched in terms as disputes under the PSR. The pre-sentence investigation report was accepted by all the parties. It was, as far as the guidelines was concerned, mathematically accurate. It provided information to the Court that we, as the defense and the government, certainly felt was – was correct. But it wasn't adequate. What fact do you think was not adequately treated? What was – wasn't adequately treated. And what we supplemented substantially during the course of the sentencing proceeding and prior to that with the sentencing memorandum was the history and characteristics of Mr. Wickwright. Not only did he not have a criminal record, but there was also matters of good community works, how he was received in the community, what he had done. Well, the judge said he had considered all those things. He considered them, but he didn't say why, how, and when they factored into his sentencing decision. I think there has to be more. When a – when an individual raises legitimate, non-frivolous, non-guideline issues, the Court, I think, is incumbent upon the district court to address those issues in a meaningful and purposeful manner and make decisions and lay out facts why they've been rejected or why they're accepted and how they play into the ultimate determination of the sentence, which is sufficient but not greater than necessary, which is the district court's responsibility, and it is this Court's responsibility to determine whether or not that process and the ultimate result was reasonable. Mr. Gallagher, on that argument, I think the strongest case in support of your position is Cardi, the one you mentioned in your 28-day letter. Should we wait until the mandate issues in that case before deciding this case, or does it make that much difference? Your Honor, certainly. I believe that Cardi was correctly decided, and whether or not the mandate issues or not, the principles of law that are therein stated should be – Well, the reason I say it, the reason mandate might not issue because, you know, there might be an in-bank call. That's correct, Your Honor. And then if that happens, then it seems to me it throws Cardi into doubt, doesn't it? It throws Cardi out, Your Honor, but not Cooper and Cunningham, which were quoted extensively in Cardi, which are from the Third Circuit, which talk about the very same thing. No, but that would give the in-bank court the opportunity to reassess the reliance on Cooper. Absolutely. And the other factors in Cardi. Absolutely. That is correct. So my overall question is, do you think we should or shouldn't, you know, wait for the dust to settle around Cardi before deciding this case? I think that that probably would be appropriate. And since I am 35 seconds in the hole. We've asked you quite a few questions. We'll give you a minute for rebuttal. Thank you very much, Your Honor. Ms. Hurd? Thank you, Your Honors. I'm not a baseball fan, so I can't comment on the best third baseman. I can tell you who I think the best quarterhorse rider or the best quarterhorse was, but. Now you're speaking my language. There you go. I think this case is completely different than the case that Mr. Gallagher relies on, the Cardi case. In Cardi, the district court said, I've considered the pre-sentence report, the defendant's objections, and everybody's sentencing memorandums. The Cardi court did not say, let me talk about 3553 and why I think that's each individual factor. And in this case, Judge Haddon made what I consider to be a rather impeccable record for your review, in terms of why he did what he did. And he certainly did take into account that everybody thought Boyd Whitwright was a great guy, that he had been full-time employed and read the letters of support, and that he had no criminal history. None of those things were disputed by anybody in this case. And the judge noted, I have taken into account your history and characteristics, and I've read with interest the number of letters submitted on your behalf. And I hope you will keep in mind the content of those letters, so that when you have completed your obligations of sentence. Tell me what page you're on. We're looking at excerpts of record page 95. All right. And it's quoted in my brief, because I think that shows the judge was looking at what everybody thought of him as a great guy. And he said, I want you to keep that in mind when you get done with your sentence, because I don't want you to let those people down, because they've come to bat for you, including his wife, and I believe his minister, and one of his children. And then the judge goes on to talk about, I gave consideration to a number of statutory considerations. And one of the things he said I specifically looked at was that you could have gotten up to 240 months here, that this is a mandatory five-up-to-20-year sentence. But obviously, congressionally, people thought this was a very heinous offense. And he said I took into account the nature and circumstances of the offense, because it was, quote, no small part of this court's consideration, because this offense involves hundreds of images of children being abused, end quote. Again, at excerpt 95. In this case, Boyd Whitright had 42 of some of the most vile child pornography movies I've ever seen, and I've been doing this for 17 years. He had images of very tiny children being just horrendously sexually abused, very long movies as well, that he'd been collecting for at least a period of a year and a half. And the judge looked at the fact that that offense had continued for a lengthy period of time and continues on in excerpts of record, I have to provide you with just punishment, and I have to show adequate deterrence. And he says the message that this court must send is it is not permissible to engage in this type of activity. He also said, I'm going to make a recommendation for you to be in treatment, which is required by the statute, recommended that he be placed in Butner, North Carolina, at the Federal Sex Offender Treatment Program. So the way you, the short of it is the way you read the sentencing, the transcripts of the sentencing proceeding, I mean, this case is nowhere near Carty. I believe it absolutely is nowhere near Carter. I think Judge Haddon in this case took great pains to very specifically say, I understand Booker, I understand Ameline, because he was the district judge in the Ameline case. Lucky him. Three or four times over now. And he was being very careful to make the record, because when you, when you just look at Mr. Whitwright, he was a fairly small man who had no criminal history with a supportive wife who was in the courtroom and children and had been employed. But then you look at this other part of him where he had collected and viewed for his own pleasure hundreds of images of children. And it was, I think the judge was looking at those two things and balancing them specifically as he was supposed to under 3553A. And so I don't think that any complaint can be made about the Carty case. I know that Mr. Gallagher and I certainly disagree on this. He believes the Court should say something like, I think that these bad things overrule your good things, and here's why. But I think the Court did that. I think the Court said, this is a heinous offense. You had lots of images. It happened over a long period of time. I need to show the public that this is not acceptable. These images were on the Internet, and they're out there for everybody to see. And you and everybody else needs to understand why this is wrong. And I think the Court did a very good job of setting forth a record for your review. If you have any questions on the other issue that was raised, the Reardon issue, I can certainly answer those. Otherwise, I'll let Mr. Gallagher have some additional time. Thank you. The Court was kind enough to grant me a minute. I don't think I'm going to use that much time. The government did hear exactly what the district court did and exactly what they did in their brief and exactly what the district court did when it made its judgment, and that is that it focused almost entirely on the asperity of the offense, quoting, if not directly, then at least by reference, to the guideline factors and not to the other 3553A factors that were legitimately raised by Mr. Whitwright at sentencing. Yes, Your Honors, this is a disgusting and horrible crime, but there's two sides to every story. And the other side was not adequately addressed by the trial court, and that is that Boyd Whitwright is an individual. And this Court has said in Nose's Gun that there must be a specific sentence made for the specific defendant and not just a focus on the asperity of the offense. Thank you, Judge. Thank you. We appreciate the arguments. They've been very helpful, and the case just argued is submitted. Next, we will change gears and move to Amcutter Company v. Carroll.
judges: Goodwin, Tashima, Graber